Houston & Texas Central Railway Company v. W. C. Conner.

Decided March 1, 1902.

### 1.—Pledge—Redemption—Option to Third Party—Title.

Where, in an action to redeem certain stock deposited as collateral, the defendant by special plea alleged that plaintiff had given to a third party an option on the stock which had been accepted and defendant had been notified by such third party not to deliver the stock to plaintiff, but the plea did not state the terms of the option or that such third party had complied therewith and bound himself to buy on the terms offered, the plea did not show a sale of the stock or that plaintiff had parted with title thereto, and a demurrer to it was properly sustained.

### 2.—Same—Plea Not Sufficient.

Defendant could not withhold the possession of the stock from plaintiff because of an optional agreement to sell the stock to such third party unless it showed that the agreement was a valid and binding one and that its terms had been complied with.

### 3.—Same—Parties.

The third party alleged to have bought the stock not being a party to the contract of bailment on which this suit was brought, and not having been made a party by defendant, it could not set up as a defense that plaintiff had not made him a party.

Appeal from Dallas.   Tried below before Hon. Richard Morgan.

*Baker, Botts, Baker & Lovett, W. J. J. Smith,* and *R. De Armond,* for appellant.

*Coke & Coke* and *Chas. Fred Tucker,* for appellee.

TEMPLETON, Associate Justice.—On May 5, 1898, the appellee, W. C. Conner, made, executed, and delivered to the appellant, the Houston & Texas Central Railway Company, his note for $20,000, due twelve months after date and bearing interest at the rate of 6 per cent per annum.   At the same time, he deposited with appellant certain shares of stock in the Dallas Terminal Railway and Union Depot Company as collateral to secure the note.   On March 6, 1901, he tendered payment of the note and demanded the return of the collateral.   The tender was rejected and the demand refused.   Appellee thereupon brought this suit to redeem the said shares of stock, the amount due on said note being deposited subject to the control of the court.   On a trial before the court, without a jury, a decree was entered requiring appellant to return the collateral to appellee, and providing that when appellant had complied with such decree the sum on deposit should be paid over to it.

The only questions presented on this appeal arise upon the action of the trial court in sustaining a demurrer to one paragraph of appellant's answer.   The said paragraph reads as follows: "Defendant says that on or about the 27th day of January, 1900, plaintiff made and entered into a contract with C. P. Huntington, then of the city of New York, State

of New York, who was then acting in the premises for the Southern Pacific Company, a corporation created and existing by and under the laws of the State of Kentucky, wherein and whereby plaintiff agreed, bound, and obligated himself to and did give C. P. Huntington, acting for said Southern Pacific Company, an option to purchase from plaintiff, for a price and sum then agreed upon, a majority of all of the outstanding capital stock of the said Dallas, Fort Worth & Gulf Railway Company, and also then agreed with said C. P. Huntington, acting for said Southern Pacific Company, that the stock described in plaintiff's petition and then held by this defendant should remain in the possession of this defendant, and should be subject to said agreement. That afterwards and within the said sixty days, on or about the 20th day of March, 1900, the said C. P. Huntington, acting for the Southern Pacific Company, availed himself of the right thus given him by plaintiff to purchase said stock, and declared his acceptance of the said option, and gave due and proper notice thereof to plaintiff. And defendant says that said notice of said contract and agreement between said plaintiff and said Huntington, acting for said Southern Pacific Company, was duly given, and defendant had notice of the acceptance by said Huntington of said option, and the right to purchase said stock, and this defendant was notified by said Huntington and by said Southern Pacific Company, for which he was acting, not to deliver the same or any part thereof to plaintiff, and defendant was forbidden by said Huntington and by said Southern Pacific Company to deliver said stock, or any part thereof, to plaintiff, because of the sale, and agreement to sell the same by plaintiff to said Southern Pacific Company through said Huntington, as hereinbefore alleged. Defendant further alleges that plaintiff Conner fully assented to and acquiesced in the retention of said stock in the possession of the defendant, subject to the agreement as aforesaid between him and the said Huntington, acting for the Southern Pacific Company, and at no time objected thereto until a few days prior to the commencement of this suit, when, on account of differences which had arisen between plaintiff and the said Southern Pacific Company, respecting the meaning and effect of the agreement between them, plaintiff demanded said stock of this defendant, notwithstanding his aforesaid agreement, and the fact that this defendant had knowledge thereof, and notice from said Southern Pacific Company and said Huntington not to deliver said stock or any part thereof to plaintiff. Defendant further avers that on or about the 10th day of April, 1901, said Southern Pacific Company commenced in the Circuit Court of the United States for the Northern District of Texas, at Dallas, a suit, being numbered 550 upon its equity docket, against plaintiff Connor, the Dallas, Fort Worth & Gulf Railway Company, and this defendant, as defendants, seeking a specific performance of the aforesaid contract made between plaintiff in this suit and said Huntington, acting for said Southern Pacific Company, and praying also for an injunction against defendants in said suit, including an injunction against this defendant restraining it from deliver-

ing to the plaintiff in this suit, or to anyone for him, any of the certificates of capital stock described in plaintiff's petition in this suit; and said suit is still pending and undetermined in said Circuit Court of the United States. Defendant further avers that if plaintiff ever pledged with defendant any of the certificates described or referred to in his petition herein, plaintiff has since sold all his right and interest in and to, or under and by virtue of said certificates, and is no longer entitled, if he ever was, to the possession thereof." The demurrer questioned the sufficiency of the plea on the ground that it does not show that appellant was in any way interested in the matters therein pleaded, and seeks to set up and enforce some supposed claim of the Southern Pacific Company to said collateral without making such company a party.

Appellant contends that the said plea shows that appellee had by contract divested himself of the title to the stock collateral and is not, therefore, entitled to recover. The contention can not be sustained. The facts stated in the plea are not sufficient to show a purchase by Huntington of the stock in controversy. The allegation is that on January 27, 1900, appellee agreed to and did give Huntington an option to purchase a majority of the stock of the Dallas, Fort Worth & Gulf Railway Company for an agreed consideration, and that afterwards, within the said sixty days, on or about March 20, 1900, he availed himself of the right thus given and declared his acceptance of the option. The stock in controversy is part of the stock of the Dallas Terminal Railway and Union Depot Company, and was not, so far as is disclosed by the plea, the stock which appellee offered for sale. But it is not necessary to rest our conclusion upon this ground. Assuming that the option was intended to cover the stock in controversy, no sale or change of ownership is shown. It is not alleged that Huntington, within the time allowed by the option, elected to buy the stock upon the terms proposed, and that he paid or offered to pay the agreed consideration, and that he had acquired and now held possession or control of the stock or right to such possession or control. It is alleged that he "availed himself of the right thus given to purchase the stock, and declared his acceptance of the said option," but it is not alleged that he elected to buy the stock and proclaimed the election. We are not clear that Huntington, by accepting the option, acquired any right except the privilege of electing to buy the stock upon the terms offered. The plea does not state that the right of election was ever exercised. The right to accept the option appears to be the one of which Huntington availed himself. If Huntington elected to buy and bound himself to buy, the fact should have been alleged without any indirection, and the statement that he "availed himself of the right" and "declared his acceptance of the option" can not be accepted in lieu of such allegation.

But even if it had been alleged in the plea that Huntington elected to buy, the plea would still be insufficient unless it was further alleged that the election was made within the time allowed by the option and

upon the terms offered.  The plea states the date the option was given and the date it was accepted, and that it was accepted "within the said sixty days," but does not state that the option was to be good for sixty days or for any other specified term, or that it was accepted within the time it was to run.  The terms of the option are not stated, and it is not alleged that Huntington bound himself to buy on the terms of sale offered by appellee.  Neither is it claimed that Huntington ever complied with any of the terms of the alleged purchase.  The allegations of the plea in respect to a sale amount to no more than a charge that appellee gave Huntington an option on the stock and that the option was accepted.  Clearly, such facts would not constitute a sale or show that Huntington acquired any right or title to, or interest in, the stock offered for sale.

Appellant presents the further contention that the plea shows that appellee is not entitled to recover the stock collateral because he has parted with his right to the possession thereof, having agreed with Huntington that the same should be retained by appellant, subject to the alleged agreement concerning the sale.  The allegation is that appellee agreed with Huntington that the stock should remain in the possession of appellant and should be subject to the agreement concerning the sale; that Huntington notified appellant of the agreement and forbade it to deliver the stock to appellee; that appellee assented to and acquiesced in the retention of the stock by appellant, subject to the agreement.  It is obvious that the right of Huntington's principal to insist upon appellant retaining the stock depends, in the first place, upon the validity and binding force of the contract of sale.  It has no such right unless, by virtue of the contract of sale, it acquired and now holds the title to the stock offered by appellee for sale, or at least some enforcible claim thereto.  We have seen above that such is not the case, and the Southern Pacific Company can not insist upon appellant holding the stock in controversy subject to an agreement to sell which is not shown to be valid and binding.

But even if the agreement of sale was sufficient to vest a right in the Southern Pacific Company to the stock sold, still, the plea is defective for the reason that it does not show the conditions upon which the stock collateral was to be held by appellant, or that, under the conditions upon which it was to be held, appellee is not now entitled to recover possession. It is not alleged that appellee has not conveyed to the Southern Pacific Company a majority of the capital stock of the Dallas, Fort Worth & Gulf Railway Company, which is what, according to appellant's theory, he had contracted to do.  The only allegation in respect to the terms upon which the stock in controversy was to be held by appellant is that it was to be held "subject to the agreement."  The plea does not disclose the purpose of the pledge.  Was the stock in controversy the subject of the sale?  Was it to be held as security for the faithful performance by appellee of his part of the contract of sale?  Was the stock ever to be delivered to the Southern Pacific Company, and if so, upon

what terms? Was it ever to be delivered to appellee, and if so, upon what conditions? Under the terms upon which the stock was pledged, who is now entitled to possession thereof, the Southern Pacific Company or the appellee? Have the conditions of the pledge been performed or violated by either party? Is the stock still subject to the pledge? The plea is silent in respect to these matters, and shows no present right in the Southern Pacific Company to have the stock held subject to the pledge.

Appellant also contends that the plea presents a defense to appellee's suit, because it shows that the Southern Pacific Company is asserting some right or title to the stock in controversy and is claiming that, by virtue of an agreement with appellee, it is entitled to have the stock held by appellant, subject to a contract made by appellee with it for the sale of certain railway stocks, and has notified appellant of the facts and forbidden it to deliver the stock to appellee. Such being the case, appellant insists that appellee should be compelled to make the Southern Pacific Company a party to this suit, in order that the rights of the claimants of the stock in controversy may be adjudicated and appellant protected against the demands which may be made on it by the Southern Pacific Company. The stock was originally deposited with appellant by appellee, who was then the undisputed owner thereof. Appellee has complied with the conditions upon which the deposit was made and demands the return of his property. Appellant is resisting the demand on the ground that since the deposit was made appellee has parted with his title to the property and with his right to possession thereof, and has agreed that it should be retained by appellant, subject to a contract made by him with the Southern Pacific Company.

We have seen above that the facts pleaded do not show that the Southern Pacific Company ever acquired or now has any title to or interest in the stock in controversy or right to the possession thereof or right to insist upon the stock being held in pledge. Appellant having received the stock from appellee is bound to restore it to him upon his complying with the conditions of the deposit, unless, by subsequent agreement, he has charged the stock with an additional pledge. No such pledge is shown, and if the Southern Pacific Company was a party and was asserting such pledge, based upon the facts set up by appellant, it would be cast in the suit. Unless the Southern Pacific Company has a better claim or greater right than appellant has discovered, it has no interest in this proceeding and appellant would incur no liability to it by surrendering the stock in controversy to appellee. Nor is appellee bound by any contract with appellant not to demand the stock. Appellant was not a party, either to the alleged contract of appellee to sell the stock to Huntington or to the agreement that the stock in controversy should be held subject to such contract. Appellee, the owner of the stock, never notified appellant that it might hold the stock subject to the alleged agreement, and never informed it that the stock in its possession had been pledged by him to the Southern Pacific Company for any purpose.

The said company notified appellant that it had contracted to buy of appellee certain railroad stocks and that appellee had agreed that appellant should hold the stock in controversy, subject to said contract, and forbade appellant to deliver the stock to appellee. It was the duty of appellant to reply to such notice and command by saying that it had contracted with appellee to return the collateral in its hands to him when he complied with the conditions upon which the same had been deposited, and that it would do so unless restrained by proper legal proceedings. If the facts were as claimed by the Southern Pacific Company, it should have instituted such proceedings or have intervened in this suit. If appellant desired to avoid future controversy with the said company, it could and should have made that company a party. It was given an opportunity to make said company a party and failed to do so, and should not now be heard to complain.

There is no error in the judgment and it is affirmed.

*Affirmed.*